# EXHIBIT

# 5

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER B. EILAND, DVM, MS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 2005-CV-459-VPM |
| DR. BYRON L. BLAGBURN, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendants Dr. Byron L. Blagburn, Dr. Charles Hendrix, Dr. Joseph Janicki, Dr. Stephen McFarland, Dr. Ed Richardson and Dr. Lauren Wolfe (collectively, the "Defendants") respond to the First Set of Interrogatories of Plaintiff Christopher B. Eiland ("Eiland") as follows:

### General Objections

1. Defendants object to the interrogatories to the extent they call for privileged information or documents protected by the attorney-client privilege and/or the work-product doctrine.

2. Defendants object to the interrogatories to the extent they seek to require Defendants to comply with requirements outside the scope of or contrary to the *Federal Rules of Civil Procedure*.

3. Defendants object to the interrogatories to the extent they seek information or documents not relevant to the subject matter of this action or not reasonably calculated to lead to the discovery of admissible evidence.

1684151



4. Defendants object to the interrogatories to the extent they are vague, overly broad, and/or unduly burdensome, or not appropriately limited geographically by subject matter, or by time, or to the extent they seek information concerning trade secrets and/or private financial affairs, subject to the entry of a protective/confidentiality order.

## Responses to Interrogatories

**INTERROGATORY NO. 1:**

Identify each member of Chris Eiland's graduate student advisory committee.

**RESPONSE:**

This request is impossible to answer since Dr. Eiland had not established a student advisory committee in his Doctor of Philosophy in biomedical sciences program prior to withdrawing from Auburn University. Dr. Eiland's advisory committee in his Master of Science program consisted of: Dr. Joseph C. Newton; Dr. Jennifer A. Spencer; Dr. Byron L. Blagburn, and Dr. Allen R. Dillon.

**INTERROGATORY NO. 2:**

Describe the responsibilities of the graduate student's advisory committee.

**RESPONSE:**

Defendants object on the grounds that this request is vague, ambiguous and incapable of being answered as phrased. Defendants further object on the grounds that this request seeks information not relevant to the subject matter of this action or not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, please see the documents provided in response to Plaintiff's request for production.

**INTERROGATORY NO. 3:**

Identify the individual who appoints the members of a graduate student's advisory committee.

**RESPONSE:**

Defendants object to this interrogatory on the grounds that it is incapable of being answered as phrased. There is no single individual who appoints the graduate student's advisory committee. Subject to and without waiving this objection, please see the documents provided in response to Plaintiff's request for production.

**INTERROGATORY NO. 4:**

Identify the dean of the Graduate School.

**RESPONSE:**

Dr. Stephen McFarland

**INTERROGATORY NO. 5:**

Describe the responsibilities of the dean of the Graduate School as they relate to a graduate student's advisory committee and to the student's major professor.

**RESPONSE:**

Defendants object on the grounds that this request is vague, ambiguous and incapable of being answered as phrased. Subject to and without waiving this objection, please see the documents provided in response to Plaintiff's request for production.

**INTERROGATORY NO. 6:**

Explain the criteria used and the procedure used to select members of the advisory committee.

**RESPONSE**:

Defendants object to this request on the grounds that this request seeks information not relevant to the subject matter of this action or not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, please see the documents provided in response to Plaintiff's request for production.

**INTERROGATORY NO. 7**:

Identify each person by name and title who made complaints about Chris Eiland to Dr. Blagburn for the time period of 2002 to the end of 2003.

**RESPONSE**:

Please see response to Interrogatory No. 8.

**INTERROGATORY NO. 8**:

For each person identified in interrogatory number seven, state the date of occurrence, state specifically the allegations contained in the complaint, actions taken as a result of the complaint, and the resolution.

**RESPONSE**:

No formal complaints or formal grievances were made against Dr. Eiland during the period of time in question. However, Dr. Blagburn was advised of the following informal complaints during the Summer and Fall 2003 semesters:

- Jamie Butler – See the documents provided in response to Plaintiff's request for production.

- Tracey Land – See the documents provided in response to Plaintiff's request for production.

- Courtney Rich – Ms. Rich informed Dr. Blagburn that Dr. Eiland was pursuing an unwanted romantic relationship with her. Dr. Blagburn was informed by Ms. Rich that Dr. Eiland had gone so far as to show up uninvited at her apartment late at night. Dr. Blagburn was informed that Dr. Eiland's pursuit of an unwanted relationship with Ms. Rich made Ms. Rich feel

uncomfortable around Dr. Eiland, which, in turn, made it difficult for her to work in the Parasitology laboratory.

- Kellie Joiner – Ms. Joiner informed Dr. Blagburn that Dr. Eiland had become confrontational with her over an event that occurred in the resident offices. Ms. Joiner informed Dr. Blagburn that she felt threatened by Dr. Eiland as a result of the incident.

- Brandi Brunson – Ms. Brunson informed Dr. Blagburn that Dr. Eiland had gone through her personal belongings without permission.

- Peter Christopherson – Dr. Christopherson informed Dr. Blagburn that he had witnessed Dr. Eiland going through Brandi Brunson's desk.

During the Fall 2003 semester, Dr. Blagburn notified Dr. Eiland about a number of the aforementioned informal complaints and Dr. Blagburn and Dr. Eiland met on several occasions to discuss the issues raised in the informal complaints.

For further response to this interrogatory, you are referred to the deposition of Dr. Byron L. Blagburn taken June 12, 2006.

**INTERROGATORY NO. 9**:

State Auburn University's policy for noticing graduate students whose progress is deemed unsatisfactory by the advisory committee.

**RESPONSE**:

Defendants object on the grounds that this request is vague, ambiguous and incapable of being answered as phrased. Defendants further object on the grounds that this request seeks information not relevant to the subject matter of this action or not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, for a general description of the relationship between a student and his/her advisory committee, please see the documents provided in response to Plaintiff's request for production.

**INTERROGATORY NO. 10**:

Describe the responsibilities of a graduate student's major professor.

168415.1                                                    5

**RESPONSE**:

Defendants object on the grounds that this request is vague, ambiguous and incapable of being answered as phrased. Subject to and without waiving this objection, there is no formal policy setting forth the responsibilities of a major professor with respect to his/her student. However, in general terms, a student's major professor, until such time that he or she may resign, guides the student through his or her academic program. This guidance includes, among other things, assisting the student in establishing an advisory committee, developing a plan of study and assisting the student in identifying a topic for research. The major professor also oversees the student's progression in his or her course work and monitors the student's progress in the laboratory and with his/her research. At all times, the major professor is to monitor the student to confirm that he or she is functioning appropriately in the academic environment.

For further response to this interrogatory, you are referred to the deposition of Dr. Byron L. Blagburn taken June 12, 2006.

**INTERROGATORY NO. 11**:

Identify Chris Eiland's major professor.

**RESPONSE**:

Before resigning from the position, Dr. Byron Blagburn was Dr. Eiland's major professor. Dr. Eiland did not identify another major professor after Dr. Blagburn's resignation from that position.

**INTERROGATORY NO. 12**:

How was Chris Eiland's assistantship funded?

**RESPONSE**:

Dr. Eiland's assistantship was funded through the research grants of Dr. Byron Blagburn.

**INTERROGATORY NO. 13**:

Provide the dates for the spring semester at Auburn University for the 2003-2004 school term.

**RESPONSE:**

January 13, 2004 – May 11, 2004.

**INTERROGATORY NO. 14**:

Provide the dates for fall semester at Auburn University for the 2003-2004 school term.

**RESPONSE**:

August 20, 2003 – December 17, 2003.

**INTERROGATORY NO. 15**:

Provide an explanation of the advisory committee's evaluation of Chris Eiland's progress in his graduate program at end of fall semester 2003.

**RESPONSE**:

Defendants object on the grounds that this request is vague, ambiguous and incapable of being answered as phrased. Defendants further object on the grounds that this request seeks information not relevant to the subject matter of this action or not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, this request is impossible to answer since Dr. Eiland had not established an advisory committee prior to withdrawing from Auburn University.

**INTERROGATORY NO. 16:**

Provide the dates that Chris Eiland was a student at Auburn University, both undergraduate and graduate.

**RESPONSE:**

Please see documents provided in response to Plaintiff's request for production.

**INTERROGATORY NO. 17:**

State Auburn University's policy for dismissing graduate research assistants from their assistantship.

**RESPONSE:**

Auburn University has no official policy for dismissing a graduate research assistant from an assistantship. For further information regarding graduate assistants at Auburn University, please see the documents provided in response to Plaintiff's request for production.

**INTERROGATORY NO. 18:**

Does Dr. Blagburn contend that he resigned his position as Chris Eiland's major professor?

**RESPONSE:**

Yes.

**INTERROGATORY NO. 19:**

If the response to interrogatory number eighteen is in the affirmative, state each and every reason for his resignation and the date of his resignation.

**RESPONSE:**

Dr. Blagburn informed Dr. Eiland that he was resigning from his position as Chris Eiland's major professor on December 3, 2003, and formally informed Dr. Stephen McFarland and Dr. Joseph Janicki of this action on December 8, 2003.

Dr. Blagburn resigned from his position as Dr. Eiland's major professor due, in large part, to the numerous disruptions caused by Dr. Eiland in the Summer and Fall of 2003, and

because it was apparent that Dr. Eiland could no longer function in Dr. Blagburn's laboratory and as his mentoree.

**INTERROGATORY NO. 20:**

If the response to interrogatory number eighteen is in the affirmative, explain how Chris Eiland's advisory committee was notified.

**RESPONSE:**

This request is impossible to answer since Dr. Eiland had not established an advisory committee prior to his withdrawal from Auburn University.

**INTERROGATORY NO. 21:**

If the response to interrogatory number eighteen is in the affirmative, explain how Chris Eiland was notified, and the date of such notification.

**RESPONSE:**

Dr. Eiland was notified that Dr. Blagburn was resigning from his position as his major professor in a meeting on December 3, 2003. Written notice of Dr. Blagburn's resignation was provided to Dr. Joseph Janicki and Dr. Lauren Wolfe on December 8, 2003. The December 3, 2003 meeting was attended by Dr. Byron Blagburn, Dr. Charles Hendrix and Dr. Chris Eiland.

**INTERROGATORY NO. 22:**

Provide a summary of the discussion at the December 3, 2003, meeting between Chris Eiland and Dr. Blagburn, including, but not limited to, the purpose of the meeting, who attended, and the conclusions reached, if any.

**RESPONSE:**

The purpose of the December 3, 2003 meeting was to inform Dr. Eiland that Dr. Blagburn was resigning from his position as his major professor, and he did so during the

168415.1                                  9

December 3, 2003 meeting. The meeting was attended by Dr. Byron Blagburn, Dr. Charles Hendrix and Dr. Chris Eiland.

For further response to this interrogatory, you are referred to the deposition of Dr. Byron L. Blagburn taken June 12, 2006.

**INTERROGATORY NO. 23:**

Describe the responsibilities of the dean of the graduate program as they relate to the graduate student.

**RESPONSE:**

Defendants object on the grounds that this request is vague, ambiguous and incapable of being answered as phrased. Subject to and without waiving this objection, please see the documents provided in response to Plaintiff's request for production.

DATED this __14th__ day of June, 2006.

_____
One of the Attorneys for Defendants

**OF COUNSEL:**

Dave Boyd
G. Lane Knight
Balch & Bingham LLP
105 Tallapoosa Street
Suite 200
Montgomery, Alabama 36104-2549
Telephone: (334) 834-6500
Facsimile: (334) 269-3115

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following by U.S. Mail, properly addressed and postage prepaid, on this the 14th day of June, 2006:

Kathryn Dickey
Attorney at Law
322 Alabama Street
Montgomery, Alabama 36104

_____
Of Counsel

168415 1

11