# DR. CHRISTOPHER EILAND

# VOLUME 2

1

```
           IN THE UNITED STATES DISTRICT COURT

           FOR THE MIDDLE DISTRICT OF ALABAMA

                      EASTERN DIVISION

CHRISTOPHER B. EILAND, DVM, MS,

      Plaintiff,
                                 CIVIL ACTION
   VS.
                                 FILE NO. 2005-CV-459-VPM

DR. BYRON L. BLAGBURN, individually
and in his official capacity, DR.
CHARLES HENDRIX, individually and in
his official capacity, DR. JOSEPH JANICKI,
individually and in his official capacity,
DR. STEPHEN McFARLAND, individually and in
his official capacity, DR. ED RICHARDSON,
in his official capacity as President of
Auburn University, and DR. LAUREN WOLFE,
individually and in his official capacity,

      Defendants.
```

**COPY**

VOLUME II

CONTINUED DEPOSITION OF **CHRISTOPHER B. EILAND, DVM, MS**, taken on behalf of the Plaintiff, pursuant to the stipulations set forth herein, before Jeana S. Boggs, Certified Court Reporter and Notary Public, at the law offices of Kathryn Dickey, LLC, 322 Alabama Street, Suite B, Montgomery, Alabama, commencing at approximately 9:13 a.m., Monday, June 12, 2006.

Boggs Reporting & Video
334.264.6227/800.397.5590   www.boggsreporters.com

|    |   |                                                                 |
|----|---|-----------------------------------------------------------------|
| 1  |   | looking for a graduate program in biomedical                    |
| 2  |   | sciences for graduate students and you look                     |
| 3  |   | for the point of contact for the different                      |
| 4  |   | departments, it has that information there.                     |
| 5  | Q | Okay.  Chris, you had not officially                            |
| 6  |   | established an advisory committee in your                       |
| 7  |   | PhD program, had you?                                           |
| 8  | A | I don't know what you mean by "officially."                     |
| 9  | Q | Well, you had no advisory committee.                            |
| 10 | A | My advisory committee was going to remain                       |
| 11 |   | the same at the meeting in August when I was                    |
| 12 |   | defending my Master's thesis.  And when I                       |
| 13 |   | was done with that and that was completed,                      |
| 14 |   | Doctor Blagburn asked all the people on my                      |
| 15 |   | committee -- Doctor Newton, Doctor Spencer,                     |
| 16 |   | and Doctor Dillon -- he notified them that                      |
| 17 |   | he was going to stay on as my major                             |
| 18 |   | professor, and asked if they would all stay                     |
| 19 |   | on as members of my committee, and they all                     |
| 20 |   | agreed, yes.                                                    |
| 21 | Q | Was that in your presence?  Were you at that                    |
| 22 |   | meeting?                                                        |
| 23 | A | Yes.                                                            |

1  A     -- altogether by Doctor Blagburn, who said
2        Doctor Wolfe told him to get rid of me, or
3        he would, and to turn in my keys to that lab
4        and to turn in my research and clear out my
5        stuff.
6  Q     Okay.
7  A     And that I would make a great
8        parasitologist, just not at Auburn.
9  Q     Right.  Did Doctor Richardson have anything
10       to do with your termination from the
11       parasitology lab?
12 A     Not to my knowledge, no.
13 Q     Doctor Janicki?
14 A     Did he --
15 Q     Yes.
16 A     -- have something to do with --
17 Q     Right.
18 A     -- my termination in the parasitology lab?
19 Q     Yeah.
20 A     I think he influenced it in some way.
21 Q     Doctor Hendrix?
22 A     He may have influenced it.
23 Q     You don't know one way or the other?

```
 1        might not always be open.  So, it would have
 2        been a decision at that time.
 3   Q    How do you know that you could have gotten a
 4        job as a professor at Auburn?
 5   A    I was being discussed as the possible
 6        replacement for Doctor Hendrix.  Doctor
 7        Blagburn had talked to me about that, and he
 8        said that Doctor Wolfe had -- he had
 9        mentioned it to Doctor Wolfe, and they had
10        talked about it.
11   Q    And when was that?
12   A    It was in the summer and beginning of fall
13        of 2003.
14   Q    Okay.  Had you ever been promised a job to
15        teach at Auburn?
16   A    Nobody promised, as to say.
17   Q    Okay.  I mean, what did they say?
18   A    They said that Doctor Blagburn told me that
19        he would like for me to be considered, and
20        consider the idea of possibly replacing
21        Doctor Hendrix when he retired.  He had
22        considered that and thought about it.  He
23        had talk to Doctor Wolfe about it.  And they
```

REPORTER'S CERTIFICATE

STATE OF ALABAMA)

ELMORE COUNTY)

I, Jeana S. Boggs, Certified Professional Reporter and Notary Public in and for the State of Alabama at Large, do hereby certify on Monday, June 12, 2006, that pursuant to notice and stipulation on behalf of the Plaintiff, I reported the deposition of BYRON L. BLAGBURN, who was first duly sworn by me to speak the truth, the whole truth, and nothing but the truth, in the matter of CHRISTOPHER B. EILAND, DVM, MS, Plaintiff, versus DR. BYRON L. BLAGBURN, individually and in his official capacity, DR. CHARLES HENDRIX, individually and in his official capacity, DR. JOSEPH JANICKI, individually and in his official capacity, DR. STEPHEN McFARLAND, individually and in his official capacity, DR. ED RICHARDSON, in his official capacity as President of Auburn University, and DR. LAUREN WOLFE, individually and in his official capacity, Defendants, Civil Action No. CV-459-VPM, now pending

```
 1   in the United States District Court for the Middle
 2   District, Eastern Division of Alabama; that the
 3   foregoing colloquies, statements, questions and
 4   answers thereto were reduced to 155 typewritten
 5   pages under my direction and supervision; that the
 6   deposition is a true and accurate transcription of
 7   the testimony/evidence of the examination of said
 8   witness by counsel for the parties set out herein;
 9   that the reading and signing of said deposition was
10   not waived by witness and counsel for the parties.
11           I further certify that I am neither of
12   relative, employee, attorney or counsel of any of
13   the parties, nor am I a relative or employee of such
14   attorney or counsel, nor am I financially interested
15   in the results thereof.  All rates charged are usual
16   and customary.
17           This the 27th day of June, 2006.
18
19
20
21   Jeana S. Boggs
     Certified Court Reporter and
22   Notary Public
     Commission expires: 8/14/2006
23
```